ELLA LEONARD & another *vs.* JOHN QUINLAN.
DAVID TERRY *vs.* SAME.

Middlesex.   January 12. — 26, 1877.   COLT & AMES, JJ., absent.

The owner of a large tract of land, extending from A. Street to B. Street, conveyed to different persons parcels of it bounded by A. Street and by opposite sides of a passageway twenty-six feet wide, which was not indicated by monuments. He then conveyed to other persons parcels upon the northerly side of the passageway, and afterwards granted to one of them a right of way in a strip twenty-six feet wide, extending in a straight line from a defined monument on B. Street to A. Street, between the lots formerly conveyed by him; the deed stating its object to be to define the grant of the passageway named in his former deed. He afterwards pointed out to the owner of another of the lots granted by him, bounded on the passageway, a straight line from street to street as its northerly boundary, and directed him to place his fence thereon, which was done. He at that time owned land on the opposite side of the passageway, which in a subsequent conveyance by his heirs was described as bounded thereon. *Held,* that such location of the passageway was conclusive as against him and those claiming under him so far as his land then extended.

TWO WRITS OF ENTRY to recover parcels of land in Somerville. Pleas, *nul disseisin.* Trial in the Superior Court, before *Colburn,* J., who allowed a bill of exceptions in substance as follows:

It appeared in evidence that, prior to 1850, one Thomas Rand, Jr. was the owner of a large tract of land in Somerville, on the northeasterly side of Milk Street, and between Spring Hill Street, afterwards called Spring Street, on the southeast, and Belmont Street on the northwest.

On February 14, 1850, Rand conveyed to one George F. Conant, 1500 square feet of land on the westerly side of Spring Hill Street, bounded, "beginning at the northeasterly corner of said lot, at a contemplated street twenty-five feet wide; thence running westerly, on said contemplated street, fifty feet; thence southerly, on my other land, and parallel with said Spring Hill Street, thirty feet; thence easterly, and parallel with said contemplated street, fifty feet; thence northerly, on said Spring Hill Street, to the point of beginning."

On June 30, 1854, Rand conveyed to one James R. Bugbee a lot of land bounded "southeasterly, on said Spring Street, forty feet; northeasterly, on land of Enoch R. Morse, two hundred feet; northwesterly, on land of said Thomas Rand, forty feet

southwesterly, on a street or passageway twenty-six feet wide, extending from Spring Street aforesaid to the rear of said piece or parcel of land hereby conveyed."

On November 15, 1859, Rand conveyed to Francis E. Whitcomb a lot of land, " bounded, beginning at the southwesterly corner of land of Morse, about two hundred feet from Spring Street; thence running southwesterly, on land of Bugbee, forty feet, to a court or passageway twenty-six feet in breadth ; thence northwesterly on said passageway, 145 feet; thence northeasterly on other land of said Rand, fifty-three feet, to Hill's Court, fifteen feet in width; thence southeasterly, on land of Hill and Whitcomb, 150¾ feet, to the point of beginning."

Prior to May 4, 1864, Rand had conveyed a lot of land on Belmont Street to one Conant, which, in the grant to Whitcomb hereinafter mentioned, is made the northerly boundary of the passageway ; and on May 4, 1864, continued to own all the land on the southerly side of the passageway, between the Conant lot on Spring Street and Belmont Street, and all the land on the northerly side of the passageway between the Whitcomb lot, above mentioned, and said Conant lot on Belmont Street.

No passageway existed at the time of the conveyance to Conant, February 14, 1850, and on May 4, 1864, no fences or monuments had been erected on the land to indicate the northerly line of the passageway, except the fence erected by Whitcomb in 1859, hereinafter mentioned, and there was nothing on the land to indicate the southerly line of the passage, except certain structures which said Conant had erected on his lot on Spring Street, and which, the tenants at the trial contended, marked the southerly line of the passageway, so far at least as said Conant lot extended, but this claim was contested by the demandants.

On May 4, 1864, said Rand, by a full warranty deed in common form, conveyed to said Francis E. Whitcomb " the right at all times and in all ordinary modes, on foot and with vehicles, horses and cattle, to use a certain passageway or strip of land in said Somerville, twenty-six feet wide, extending in a straight line from Spring Street on the southeast, to Belmont Street on the northwest, 350 feet, by estimation, more or less, and between a lot of land heretofore conveyed by myself to one Bugbee, and a lot conveyed by me to one Conant, on said Spring Street; and

between a lot I have conveyed to said Whitcomb and the land opposite, still belonging to myself, and also crossing a strip of land, owned by myself, a part of the distance, and then separating a lot conveyed by myself to one Conant, on said Belmont Street, from land opposite, still held by myself. The object of this grant being to confirm and define the grant of ' the passageway ' named in a certain deed from myself to said Whitcomb, dated November 15, 1859, recorded with Middlesex Deeds, So. Dist., book 829, page 174, in which deed, and by which, it was my intention to convey the free use of the passageway herein defined. Said use of the passageway to be had and enjoyed by the grantee and his heirs and assigns, in common with others to whom I have already, or may hereafter, grant its use."

In May, 1865, Enoch R. Morse, having bought the Bugbee lot, was about to erect a fence on the northeast line of the passageway, and it appeared in evidence that Rand, who still continued to own the lands adjoining on the passageway, as he owned them at the time of the grant to Whitcomb, was present on the land, and pointed out to Morse the northeasterly line of the passageway, and went with him to the Belmont Street end, and sighted the line through to Spring Street, and directed the placing of a pole in said straight line as a guide in erecting the fence, and that the fence was erected substantially on said straight line.

It also appeared in evidence that Whitcomb, soon after he made his purchase of November 15, 1859, erected a fence for his land along the northeasterly line of the passageway, and that Rand was present, and directed the location of this fence ; that this fence had continued until within two or three years last past, and was substantially on the straight line described in the grant of the way from Rand to Whitcomb, subsequently made.

There was no controversy as to the terminus of the passageway on Spring Street or Belmont Street, but the tenant contended that the lines of the lots conveyed to Conant and Bugbee could be fixed by the measurements called for in the deeds, (which the demandants denied,) and when fixed, established the location of the passageway against all persons, and controlled the grant from Rand to Whitcomb.

The demandants contended that Rand, by the grant to Whitcomb, and by his directions as to the location of the fences in 1859 and 1865, as above mentioned, fixed the passageway in a straight line, and in accordance with said fences, as against himself and all persons claiming under him, so far as he was then the owner of the land.

Rand died prior to June, 1866, and the tenant claimed under a deed from Rand's heirs, conveying a lot on the southwesterly side of the passageway, opposite said Bugbee or Morse lot, and the demandants claimed under deeds from the tenant, conveying parts of the land conveyed to him by said Rand's heirs. In all these deeds, the premises conveyed are bounded northeasterly by a passageway, and the question of title between the demandants and the tenant depended upon the location of its southwesterly line at this part of it.

The tenant requested the court to rule and instruct the jury as follows: "1. The deed from Rand to Whitcomb, May 4, 1864, although it says in a straight line, cannot control the prior conveyances made by Rand to Conant, February 14, 1850, and the land to Bugbee, June 30, 1850, because the deed of the passageway locates it 'between a lot of land heretofore conveyed by myself to one Bugbee, and a lot conveyed by me to one Conant.' The language must control, if the land described in the deeds of Rand to Conant and Bugbee can be located.

"2. The declarations of Rand, made after the conveyances made by him, as to the location of the passageway, cannot affect the prior deeds given by him. Having located the passageway once, and made conveyances with reference to it, he could not change the location of the passageway afterwards so as to affect the conveyances previously made."

The judge did not give the instructions in the language requested, but instructed the jury, among other things, that, by the terms of the grant from Rand to Whitcomb, of May 4, 1864, the passageway is to run in a straight line from Spring Street to Belmont Street; that, so far as the land then owned by Rand would permit, the grantee was entitled to a passageway in a straight line; that, if the jury find that the fences were erected in 1859 and 1865, under Rand's directions, as contended by the demandants, on what Rand claimed to be the northeasterly line

of the passageway, and in conformity to the straight line mentioned in the grant, these fences fixed the northeasterly line of the way, so far as the lands then owned by Rand would permit, and the southwesterly line of the way would be parallel to and twenty-six feet from the northeasterly line, so far as Rand was then the owner of land on the southwesterly side of the way, but that Rand could not by this grant, or by any acts or declarations, limit or control any prior grants or conveyances, or deprive any person of any lands or rights previously acquired."

The jury found for the demandants ; and the tenant alleged exceptions.

*J. Cutler*, for the tenant.

*T. H. Sweetser & G. A. A. Pevey*, for the demandants.

ENDICOTT, J. By the deed of 1864, Rand conveyed to Whitcomb the right to use the passageway, twenty-six feet wide, extending in a straight line from Spring Street to Belmont Street. There was no controversy as to the terminus on either street. The northerly line of the way was marked by fences erected under the direction of Rand, both before and after this deed was given. Rand then owned all the land south of the way, except the lot conveyed by him to Conant in 1850. After Rand's death, the tenant purchased from his heirs a lot on the southerly side of the way, adjoining Conant ; and conveyed portions thereof to the demandants respectively. The land thus conveyed, after the location of the way and the erection of the fences, must bound on the way as then established. The way located by Rand, twenty-six feet wide from the fences on the northerly side, subjected that strip of land to an easement, and subsequent deeds by Rand or his heirs of land on the southern side, bounding on the way, could give the grantees no right to encroach upon it. The location bound Rand and those claiming under him.

The rulings of the presiding judge were right. It was immaterial whether the measurements of boundary lines in deeds given by Rand to Conant and Bugbee, before 1864, tended to show that the location of 1864 was not on the line of the passageway. While that location could not change the way so as to affect conveyances previously made, it was conclusive against Rand and all claiming land under him, on the south side of the way, by subsequent deeds.                    *Exceptions overruled.*