## JOHN BARRETT & another *vs.* MARY MURPHY.

Berkshire. Sept. 8. — Oct. 22, 1885. FIELD, C. ALLEN, & GARDNER JJ., absent.

At the trial of a writ of entry, it appeared that all the parties claimed title through deeds from one R., and that the question in dispute was the location of the northeast corner of the demandant's lot, and the southeast corner of the tenant's lot. The demandant's line was described as beginning at the southeast corner of the tenant's lot, and running southerly four rods on a road. The tenant's line on the road was described as running from the northeast corner of land of H., four rods, to land of O. R. had previously conveyed the demandant's lot to H. by a deed which described the line on the way as running from the southeast corner of land sold to B. southerly four rods; and H. reconveyed it to R. No deed had been made by R. to B., but a bond for a deed had been given, the description of the land in which did not appear in evidence. At the time that the deed to H. was given, R. still owned the land sold to O. *Held,* that, even if, at the time of the deed to the tenant, O.'s line was a fixed monument, the demandant was not entitled to a ruling that the tenant's southeast corner and the demandant's northeast corner was to be determined by measuring four rods southerly on the way, from O.'s land. *Held, also,* that evidence was admissible, in behalf of the tenant, to show that, when H. took his deed, a stake was pointed out to him by the agent of R. as the boundary between his lot and B.'s lot; and that the owners of other lots, having deeds from R., built their division fences on lines which recognized this stake as a monument. *Held, also,* that R. was properly allowed to testify that the southern boundary of H.'s lot was a stone wall, which was four rods southerly of this stake.

At the trial of a writ of entry, it is within the discretion of the presiding judge to allow a plan to be exhibited to the jury as showing the general situation of the land, although the deeds under which the parties claim do not refer to the plan.

At the trial of a writ of entry, in which both parties claim title through R., no exception lies to the admission of the testimony of R., that the lot he sold to one of the parties was lot No. 2 on a certain plan, although the deed contained no reference to the plan, his evidence only tending to indicate its position with reference to other lots, and not to define its courses or boundaries.

At the trial of a writ of entry, a surveyor produced, in behalf of the demandant, a plan which he had made from deeds given by the common grantor of both parties. *Held*, that no exception lay to his being asked, on cross-examination, whether the line claimed by the tenant corresponded with modern fences existing on the ground.

WRIT OF ENTRY to recover a parcel of land on Furnace Street, in North Adams, being that marked by the letters A, B, C, and D, on the plan printed in the margin.* Plea, *nul disseisin*. Trial in the Superior Court, before *Rockwell*, J., who allowed a bill of exceptions, in substance as follows:

It appeared that Benjamin F. Robinson had conveyed nine adjoining lots situated on the west side of Furnace Street to different persons, and, among others, to the demandants, and to the tenant's grantors. The demandants put in evidence all

the deeds of these nine lots, in chronological order, against the objection of the tenant. By the description in the deeds, it appeared that the first lot conveyed was the extreme northern one, which began at an elm tree, (which tree as a monument was fixed and certain,) thence by a line running south on said Furnace Street (the boundaries of which were not in dispute) four rods, and thence by courses and distances to the place of beginning. The lot next conveyed was the one next south, and began at the southeast corner of the lot first conveyed, and ran south on Furnace Street four rods, to a contemplated street two rods wide. The third lot conveyed began at the southeast corner of said contemplated street and Furnace Street, and ran south on the latter street four rods, and thence by courses and distances to the place of beginning. The description in the remaining deeds, down to and including the deed of the O'Hearn lot, dated November 15, 1875, and referred to as a boundary in the tenant's deed, each began at the southeast corner of the lot next north, and ran south four rods on said Furnace Street, and thence by courses and distances to the place of beginning.

The demandants introduced these deeds to fix the southeast corner of the O'Hearn lot, referred to in the tenant's deed, and contended that the southeast corner of that lot became certain by measuring south on Furnace Street from said elm tree thirty rods, the combined distance on Furnace Street of the lots and the width of said contemplated street, as appears by the description in the deeds and by Brown's plan hereafter referred to.

The demandants put in the evidence of F. S. Smith, a civil engineer, and a plan made by him, to fix the southeast corner of the O'Hearn lot at a point thirty rods from said elm tree. On cross-examination, Smith testified, against the demandants' objection, that certain modern fences now on said lots corresponded with the southeast corner of the tenant's lot as claimed by her, and not according to the plan and survey he had made, starting from said elm tree. The only monuments referred to in these deeds were the contemplated street, the elm tree, and the southeast corners of the lots.

The demandants then introduced the deed of Benjamin F. Robinson to William Harrington of the extreme southern lot

conveyed, dated March 16, 1874, which contained the following description: "Commencing at the southeast corner of 'land I sold H. E. Bailey, thence southerly on the old Notch Road four rods; thence westerly eight rods; thence northerly' four rods, to land I sold Bailey; thence easterly on Bailey's land to place of beginning." Also the deed of said Robinson to Richard and Eliza Murphy, dated April 26, 1879, containing the following description: "Beginning at the northeast corner of land of William Harrington,. thence northerly on the road four rods, to land of E. O'Hearn; thence westerly eleven and a half rods on said O'Hearn's line; thence southerly four rods, to land of William Harrington; thence easterly on said William Harrington's north line nine rods and three links, to the place of beginning." After the conveyance to Richard and Eliza Murphy, Harrington reconveyed to said Robinson the lot which Robinson had previously conveyed to him.

The demandants then put in evidence their deed from said Robinson, dated February 14, 1881, containing the following description: "Commencing at the southeast corner of land of Richard and Eliza Murphy, thence southerly on the Notch Road four rods; thence westerly eight rods; thence northerly four rods, to land of Richard and Eliza Murphy; thence easterly on land of Richard and Eliza Murphy, to place of beginning." Also the deed of S. Proctor Thayer to the tenant, dated March 8, 1884, containing the following description: "Beginning at the northeast corner of land of John Barrett and wife, thence northerly on the road four rods, to land of E. O'Hearn; thence westerly eleven and a half rods on said O'Hearn's land; thence southerly four rods, to land of said Barrett and wife; thence easterly on said Barrett and wife's north line nine rods and three links, to the place of beginning."

The demandants offered to prove that if there ever was a conveyance from Robinson of the land next north of the Harrington lot to H. E. Bailey, such conveyance had never been recorded; which fact was admitted by the tenant.

The demandants contended that the northeast corner of the Harrington lot and the southeast corner of the Murphy lot was identical with the northeast corner of the Barrett lot and the southeast corner of the tenant's lot, and.that both corners were

at one and the same place, and both dependent on the southeast corner of the Bailey lot, and therefore uncertain, because there was no way of ascertaining the true southeast corner of the Bailey lot, in the absence of any knowledge as to what land was sold to Bailey; and that, as said southeast corner was in doubt, the only way to fix the northeast corner of the demandants' lot and the southeast corner of the tenant's lot was to measure back south on Furnace Street four rods from O'Hearn's line, referred to in the tenant's deed as a boundary which was fixed and certain, and there to fix a point as the boundary between the lots of the demandants and the tenant.

The tenant contended that the southeast corner of the Bailey lot was not in doubt, and that it was four rods north of the stone wall hereinafter referred to, and called William Harrington, who testified that at the time he took his deed from Robinson a stake was pointed out to him by the agent of the grantor, thereto specially authorized, as the northeast corner of his lot and the southeast corner of the Bailey lot, and that said stake was four rods from the stone wall and on the line of Furnace Street; and also put in the evidence of John C. Bailey, then occupying the third lot north of the Harrington lot, that, at the date of the Harrington deed, he knew of said stake being at the place testified to by Harrington. This evidence was admitted, against the objection of the demandants.

The tenant proved by Robinson, that he had given to H. E. Bailey a bond for a deed of the land lying next north of the Harrington lot, and that said bond was probably among his papers, but he could not tell until he had looked them over. The tenant offered no evidence as to the description in said bond, and the demandants were ignorant of it. The tenant then asked Robinson what was the southern boundary of the Harrington lot; and, against the objection of the demandants, the witness stated that it was the stone wall. The tenant then introduced a plan, not referred to in any of the deeds, made by F. P. Brown in 1872, and asked said Robinson if that was a plan of his lots. The demandants objected to the question and to the introduction of the plan, but the objection was overruled, and the witness stated that it was a plan of his lots. Against the objection of the demandants, the tenant then asked the witness

which lot, as marked on Brown's plan, he sold by said bond to Bailey. The witness answered, "Lot No. 2 on the plan."

The tenant, against the demandants' objection, then put in the evidence of John C. Bailey and Daniel Manning, who occupied Lots 4 and 5, tending to show that a division fence was erected by them between said lots, in the place where a corner stake was pointed out to John C. Bailey by Robinson as the northeast corner of the John C. Bailey lot, on said street, and to correspond with it, at the time he went into the occupation thereof under a written agreement to purchase, and prior to the date of the O'Hearn deed, which fence would correspond with the division line between the demandants and the tenant as claimed by the tenant.

The tenant then called William Harrington, who testified, against the demandants' objection, that at the date of his deed, March 16, 1874, and directly after the delivery thereof on the same day, he went with the agent of the grantor for that purpose, who pointed out to him a stake as the northeast corner of the Harrington lot and the southeast corner of the Bailey lot, and that it was at the place where the tenant now claims her southeast corner to be, and it remained there until 1879. It appeared that H. E. Bailey was, during 1873 and 1874, in occupation of the land described in the bond to Bailey; but what were the boundaries called for by the description in the bond could not be shown, and the tenant made no offer to show the same.

On the part of the demandants there was evidence tending to show that the deed to William Harrington, although dated March 16, 1874, was not in fact made or delivered until September 18, 1874; and that down to September 18, 1874, Harrington had no conveyance of, or bond or agreement for, the premises described in said deed, but from March 16, 1874, to September 18, 1874, did have an agreement for the purchase of one of the other lots, and for that only.

It appeared also that the grantor conveyed none of these lots until nearly two years after Brown's plan was made. The demandants introduced evidence, which was not controverted, that the grantor did not convey the lots according to the Brown plan, but began at an elm tree ten and a half feet north of the northern boundary of said lots as plotted on said plan. A

contemplated street was marked on Brown's plan, eight rods south from the northern boundary of said lots as marked on said plan, and by said plan it runs westerly nearly at right angles from said Furnace Street.

The description in the deed of the extreme northern lot to Dennis Buckley, dated February 24, 1874, beginning at the elm tree, was as follows: " Beginning at the southeast corner of B. F. Hathaway's land on the old Notch Road, thence south on the old road four rods; thence westerly nine rods, so by turning north to be four rods to land of B. F. Hathaway; thence east on land of Hathaway to place of beginning." The description of the lot next south was as follows: " Commencing on the old road at Dennis Buckley's southeast corner of land, thence southerly on the old road four rods to a contemplated new road leading from the old road westerly, which is to be two rods wide; thence westerly five and three fourths degrees north, nine rods; thence northerly four rods; thence easterly on said Buckley's land to place of beginning." The lot of land on the south side of said new road was bounded as follows: " Commencing at the southeast corner of said new road, thence running southerly on the old road four rods; thence westerly one half degree south, nine rods; thence northerly to the new road; thence easterly on the new road to the place of beginning."

The tenant contended that the contemplated street, mentioned in the deed of Lots 2 and 3, was fixed by Brown's plan, and not at a point eight rods from the elm tree, as called for in the deed of Lots 2 and 3 aforesaid. The tenant offered no evidence to show the location of said contemplated street except Brown's plan. No street has ever been opened either at the point marked on Brown's plan or where called for by said deeds.

The demandants then asked the judge to instruct the jury as follows: " 1. The jury should not consider the evidence of Benjamin F. Robinson that said stone wall was the southern boundary of the demandants' lot, and, further, that it was not to be considered by them as fixing or controlling the northeast corner of the demandants' lot. 2. If the jury find the southeast corner of ' land I sold Bailey,' or the so-called Bailey lot, is in doubt, then the O'Hearn line, and the courses and distances mentioned in the tenant's deed, must control and fix her southeast corner

by measuring back four rods south on Furnace Street from said O'Hearn's line. 3. If the jury believe the deed to Harrington was not in fact made until after said stake was so pointed out to him, and while he had an agreement for the purchase of another lot and not of the one finally conveyed, they should not consider the evidence of Harrington as to said stake. 4. The true southeast corner of the Bailey lot, as a monument, was the dividing line between the lots of the demandants and the tenant; and if the jury, in the absence of said bond, and without any knowledge of the description therein, were in doubt as to the true location of said southeast corner, they should fix it by measuring back south on the road four rods from O'Hearn's southeast corner. 5. The jury cannot find what or where the southeast corner of 'the land I sold Bailey' was, without seeing the bond, or having some knowledge of the description therein; and, as said bond was not introduced or the description therein proven, they must fix the southeast corner of the tenant's lot by reference to the other monument, courses, and distances mentioned in the tenant's deed."

The judge refused to give any of the instructions asked for by the demandants, but instructed the jury in a manner not objected to. The jury returned a verdict for the tenant; and the demandants alleged exceptions.

*M. E. Couch*, for the demandants.

*F. P. Brown*, for the tenant.

DEVENS, J. It was for the demandants to establish their title to the locus in dispute. Prior to the deed of Robinson to Harrington of the lot which the demandants now hold, Robinson had made a bond for a deed of the lot north of it to one Bailey. In fact, no deed was ever made by Robinson to Bailey, but in the description which Robinson gives of the tract sold to Harrington he defines it as "commencing at the southeast corner of land I sold Bailey." It is not controverted by either party that this refers to the tract which Robinson had agreed to convey, but had not actually conveyed, to Bailey. The bond was not produced, and the demandants apparently did not desire to avail themselves of it in locating the tract of land conveyed to Bailey, as it did not appear that any effort had been made to obtain it.

Robinson originally owned a tract of land extending along Furnace Street in North Adams, which he conveyed in nine distinct parcels, all bounding on Furnace Street, and across which tract there was a street contemplated by him between the second and third parcels as they are numbered from the north, running easterly at a right angle to Furnace Street. This street is not included in any of the deeds, and has never in fact been opened as such. The first lot conveyed by Robinson was the extreme northern one, known as the Buckley lot, while that of the demandants is the extreme southern lot. The lot known as the O'Hearn lot is the seventh lot from the north, and was conveyed by Robinson about a year and a half after the deed to Harrington. The bond for a deed made to Bailey by Robinson having been surrendered, or, if a conveyance was made, that having been surrendered, and never having been recorded, Robinson, subsequently to the deed to O'Hearn, made the deed to Richard and Eliza Murphy under which the tenant claims. The description in this deed is as follows: " Beginning at the northeast corner of land of William Harrington, thence northerly on the road four rods, to land of E. O'Hearn; thence westerly eleven and one half rods on said O'Hearn's line," &c. The northeast corner of the Harrington lot and the southeast corner of the Bailey lot were the same; and the contention of the demandants is, that the northeast corner of the Harrington lot, as a monument in the deed to Richard and Eliza Murphy, must be fixed by reversing the course first mentioned and measuring back southerly on the road from O'Hearn's southeast corner, which is a known and fixed monument. But the descriptions in the deeds of the demandants and the tenant were not fixed by commencing from the same point as were those in the deeds of the lots which were north of them, including the O'Hearn lot; and, even if the southeast corner of this lot was thus definitely fixed, the previous grant of the Harrington lot could not be fixed thereby, as that might permit a grantor to alter the boundary of the lot he had granted, to the injury of his grantee, by a subsequent act. Even if the southeast corner of the O'Hearn lot is now a known and fixed monument, it was not so at the time when the deed to Harrington was made. *Leonard* v. *Quinlan,* 121 Mass. 579.

The demandants have no proper ground of exception to the refusal of the presiding judge to give the second, fourth, and fifth requests for instructions, which in various forms request that the jury should, as matter of law, adopt the O'Hearn line, as exhibited on the survey made by Smith for the demandants, as fixing the southeast corner of the Bailey land.

The remaining exceptions relate to questions of evidence, although two of them are to the refusal of the presiding judge to instruct according to the request of the demandants. Upon the question where the northeast corner of the Harrington lot and the southeast corner of the Bailey lot, now the Murphy lot, was, which is the vital one in the case, evidence as to what monuments were in existence, and what were pointed out at the time of the conveyance, was competent. While Harrington's line began at Bailey's true corner, and not at any stake or other monument, if such existed at any point differing from the true corner, in determining that corner the existence of such monuments might be shown. If at the time of the conveyance, or so nearly connected therewith that it might fairly be held to be contemporaneous, such a monument was pointed out by the grantor, or by his authority, if thereby it was not sought to alter or vary any written description in the deed, the evidence would be admissible to apply the language of the grant and locate the subject matter of it.

Where uncertainty arises in the application of a description, evidence is received of all the facts and circumstances of the transaction, and the position and character of the land, for the purpose of ascertaining the real intention of parties. Natural or artificial objects may be established as bounds and monuments by proof that they were recognized and accepted as such by the grantor and grantee. *Gerrish* v. *Towne*, 3 Gray, 82, 87, 89. *Chester Emery Co.* v. *Lucas*, 112 Mass. 424, 434. *Hoar* v. *Goulding*, 116 Mass. 132. *Dunham* v. *Gannett*, 124 Mass. 151. The testimony of Harrington, therefore, that the stake was pointed out to him as the point constituting the northeast corner of his lot and the southeast corner of the Bailey lot, by the agent of Robinson, specially authorized thereto by the grantor, was competent. This was done at the time of the delivery of the deed, and must be deemed the act of Robinson, it having

been done by his agent, who had the necessary power and capacity.

The evidence of John C. Bailey, that he knew of the stake where Harrington claimed it to have been shown to him, was also competent; and the evidence that he and Manning, they owning Lots 4 and 5 respectively, had built their division fence to correspond with the line indicated by this stake, tended to show that its position had been called to their attention.

The evidence of Robinson, that the stone wall was the southern boundary of the Harrington lot, was competent, in connection with the evidence that had been given, without contradiction by him, that the stake was pointed out by his authority as the northeast corner, and that it was four rods from the wall. The demandants were not entitled to the instruction that it was not to be considered as tending to fix the northeast corner: in connection with the measurement at the stake, it had some tendency to show where that corner was.

The plan made in 1872 by Brown was admissible, in the discretion of the court, as showing the situation of the land. *Paine* v. *Woods*, 108 Mass. 160, 168. No instruction was asked in regard to it; and, as the bill of exceptions states that the jury were instructed in a manner not objected to, we must assume that proper instructions were given in regard to it.

The testimony of Robinson, that the lot he sold Bailey was " No. 2 on the Brown plan," was simply a general statement of its location. He did not undertake to define thereby its corners or boundaries, but to state its position with reference to the other lots delineated. In regard to this, as to the other evidence, as the bill of exceptions shows that the judge instructed the jury in a manner not objected to, otherwise than by refusing the instructions requested, it must be presumed that all necessary caution was given to prevent any improper use thereof.

It was competent also to show by Smith, on cross-examination, that his plan did not correspond with the fences as they now exist. It was proper thus to rebut any inference that it did which might have been drawn, and to show that it was a survey only as made by him by starting from the elm tree and taking the courses and distances therefrom. Even if the fact was quite immaterial as to the present position of the fences, the extent

to which a witness may be cross-examined on such matters is ordinarily entirely within the discretion of the presiding judge. *Rand* v. *Newton*, 6 Allen, 38. *Commonwealth* v. *Lyden*, 113 Mass. 452. *Wallace* v. *Taunton Street Railway*, 119 Mass. 91.

The refusal to give the third request for ruling was not insisted on at the argument.                *Exceptions overruled.*