COLLINS, ADMINISTRATOR, APPELLANT, *v.* McKAY ET AL.,
RESPONDENTS.

(No. 2,322.)

(Submitted October 1, 1907. Decided November 4, 1907.)

[92 Pac. 295.]

*Quieting Title—Mines—Uncertainty of Description—Lost Monu-
ments—Transactions with Deceased Persons—Witnesses—Com-
petency—Declarations—Deeds—Identification of Property—
Parol Evidence.*

Administrators—Quieting Title—Transactions with Deceased Persons—
Witnesses—Competency.

1. Where defendants, in a suit brought by plaintiff, as administrator,
to quiet title to certain portions of mining property, claimed title under
deeds of grant from plaintiff's intestate and prayed that their titles
be quieted as against the estate represented by plaintiff, they were
simply attempting to protect themselves against the claims and demands
of plaintiff, and were not asserting "a claim or demand against the
estate" of deceased, so as to make them incompetent to testify, under
the provisions of Laws of 1897, page 245, as to any matter of fact
occurring before their grantor's death.

Same—Character of Action—How Determined.

2. Defendants in a suit of the character set forth in the above para-
graph, are entitled to such relief as their proof warrants, and the
character of the action may not be determined from a casual remark of
either court or counsel during trial, but must be arrived at from the
pleadings.

Mining Property—Deeds—Effect—Identification of Property.

3. Under Civil Code, sections 1511 and 1512, a deed purporting to
transfer a portion of a lode claim (naming it), located for the purpose
of protecting a placer claim from possible adverse claimants prior to
procurement of patent for the latter, conveyed such portion of the
afterward patented placer claim, lying within the exterior boundaries
of the lode claim, as could be identified; and it was immaterial whether
the lode location was a valid one as against others or not.

Same—Identification—Name.

4. If a portion of a mining claim can be identified as that intended
to be conveyed, it is immaterial by what name the claim itself was
designated in the deed.

Quieting Title—Uncertainty in Description—Declarations.

5. In a suit by an administrator to recover real property, claimed by
defendants under deeds of grant from plaintiff's intestate, for alleged
uncertainty of description, declarations of defendant's grantor relative
to the title conveyed and the location of the portions transferred, were
admissible against the administrator.

Real Property—Lost Monuments—Parol Evidence.

6. Where monuments or marks called for in a deed are lost or other-
wise uncertain, their location may be proved by parol evidence.

*Appeal from District Court, Silver Bow County; J. B. Mc-Clernan, Judge.*

ACTION by J. P. Collins, as administrator of the estate of Charles Colbert, deceased, against Alex. J. McKay and others. From a decree in favor of defendants, and from an order overruling the plaintiff's motion for a new trial, he appeals. Affirmed.

*Mr. Albert J. Galen,* Attorney General, and *Mr. C. F. Kelley,* for Appellant.

Where boundaries have been completely obliterated, and nothing remains by which one can show where they originally were, it is entirely without the province of a court to assume the hazard of guessing at a description of the premises, and by injecting the same into a decree create property rights, irrespective of the intent of the parties. That such a description renders a deed void, see 4 Am. & Eng. Ency. of Law, 802; Devlin on Deeds, secs. 1010, 1011, and cases cited; *Tryon* v. *Huntoon,* 67 Cal. 325, 7 Pac. 741; *In re California College,* 1 Cal. 330; *Moore* v. *Wilkinson,* 13 Cal. 478.

The statements made by the witness Barker and all the evidence offered was merely hearsay in character. That the declarations of Burton to Barker are inadmissible, see Code Civ. Proc., sec. 3121; Wigmore on Evidence, sec. 1361 et seq.; 1 Greenleaf on Evidence, secs. 98, 99. That a similar declaration made by a surveyor to a witness is hearsay, and should be excluded, see *Beecher* v. *Galvin,* 71 Mich. 391, 39 N. W. 469; *Titterton* v. *Trees,* 78 Tex. 567, 14 S. W. 692.

Under the provisions of section 3162 of the Code of Civil Procedure, as amended by Session Laws of 1897, at page 245, the witnesses were testifying as to alleged conversations taking place between themselves and the deceased Colbert. (*Blood* v. *Fairbanks,* 50 Cal. 420; *Chase* v. *Evoy,* 51 Cal. 618; *Moore* v. *Schofield,* 96 Cal. 486, 31 Pac. 532; *Whitney* v. *Fox,* 166 U. S. 637, 17 Sup. Ct. 713, 41 L. Ed. 1145; s. c., 8 Utah, 380, 32 Pac.

49; *Rice* v. *Ridgley,* 7 Idaho, 115, 61 Pac. 290, 294; and cases cited in Wigmore on Evidence, sec. 578; *Delmoe* v. *Long,* 35 Mont. 139, 88 Pac. 778.)

*Messrs. McBride & McBride,* and *Mr. James E. Murray,* for Respondents.

Boundaries may be shown by oral testimony. It is also admissible to show where the monuments originally stood when they are lost, or their location is uncertain. (*House* v. *Jackson,* 24 Or. 89, 32 Pac. 1027; *Ferris* v. *Coover,* 10 Cal. 624; *Colton* v. *Seavey,* 22 Cal. 496; 4 Am. & Eng. Ency. of Law, 850.) Where monuments can be identified there is a conclusive presumption that the lines are where they indicate. (2 Ency. of Ev. 711, and authorities cited.) It is not the office of a description to identify the premises, but to furnish the means by which they can be identified. (*Rucker* v. *Steelman,* 73 Ind. 396; *Ames* v. *Lowrey,* 30 Minn. 283, 15 N. W. 247; *Smiley* v. *Fries,* 104 Ill. 416; *Sengfelder* v. *Hill,* 21 Wash. 371, 58 Pac. 250.)

Section 3162 of the Code of Civil Procedure has in contemplation the protection of the estate against unfounded claims made and prosecuted against the estate or the representative of the deceased person, and does not in any manner affect the defense of a claim made by the representative of the deceased person. (1 Wigmore on Evidence, sec. 578; *Owens* v. *Owens,* 14 W. Va. 88; *St. John* v. *Lofland,* 5 N. Dak. 140, 64 N. W. 930; *Sedgwick* v. *Sedgwick,* 52 Cal. 337; *Poulson* v. *Stanley,* 122 Cal. 655, 68 Am. St. Rep. 73, 55 Pac. 606; see, also, *Rapley* v. *Klugh,* 40 S. C. 134, 18 S. E. 680.)

MR. JUSTICE SMITH delivered the opinion of the court.

These are appeals from a decree in favor of the defendants, entered by the district court of Silver Bow county, and from an order overruling plaintiff's motion for a new trial.

The plaintiff brings the action as administrator of the estate of Charles Colbert, deceased, claims ownership of the Emery placer mining claim, and seeks to quiet the title of the estate to the ground included within the exterior boundaries of said mining claim as against the several defendants. The administrator alleges that in his lifetime the deceased, Colbert, "made final entries and purchase in the United States land office at Helena of the Emery placer mining claim, designated as United States mineral surveys Nos. 996 A, B, and C, situated in Silver Bow county, and on the —— day of August, 1899, and the —— day of May, 1903, patents therefor issued to the said Colbert," and by virtue thereof Colbert and his heirs became and are the owners in fee simple of the said Emery placer mining claim. He then alleges that the defendants claim an estate or interest in the land adverse to the estate of the plaintiff.

The defendants, William and Catherine Burton answered, in substance, as follows: That on or about the twenty-first day of June, 1888, the said Colbert and the defendant William Burton desired to procure United States patent for a tract of ground in Silver Bow county, which is now included within the boundaries of amended surveys Nos. 996 A and C, Emery placer mining claim, and on that date, for the purpose of procuring and perfecting title to the ground, the said Colbert and Burton located a quartz lode mining claim, called the "Protection lode claim," covering ground particularly described in the answer, and did on the day named discover within the limits of the claim a vein, etc.; that they located the same, reciting the successive steps, and filed their declaratory statement in the office of the county recorder. They then proceed to aver: "That by said location it was intended by the parties thereto, and was so recognized by the said Colbert in his lifetime, that the ground included within the exterior boundaries of the said Protection lode claim, and all rights appurtenant thereto or obtained by virtue of such location, should be and were owned by the said Colbert and Burton, share and share alike; each of said parties owning and claiming to own an undivided one-half interest in and to

the said Protection lode mining claim and the ground included within the exterior boundaries thereof, the said location having been made for the purpose of procuring title to the said ground from the United States and not otherwise." That on July 2, 1889, Colbert, by deed, granted to Burton all of his right, title and interest in the east six hundred and sixty feet of ground included within the exterior boundaries of the Protection lode claim, which said six hundred and sixty feet of the Protection claim includes within its boundaries a portion of the Emery placer, which is described by metes and bounds in the answer as containing two and ninety-six hundredths acres. That by the same deed Colbert conveyed and granted to Burton a parcel of land sixty by two hundred feet in the northwest corner of the exterior boundaries of the Protection claim, being also a portion of the Emery placer. The last piece of ground is described in the answer as follows: "Commencing at corner No. 1 of amended survey No. 996 A, which is also the northwest corner of said Protection lode claim, running thence N. 88' E. 60 feet, thence south 200 feet, thence S. 88' W. 60 feet, thence north 200 feet, to the place of beginning." That on June 12, 1889, Burton and wife, "with the full knowledge and consent of Charles Colbert," conveyed and granted to the defendant Alex. J. McKay an undivided one-fourth interest in the Protection claim. That on June ———, 1889, Burton and wife conveyed to McKay the surface of the north one hundred feet of the strip described as being 60x200 feet in dimension, and on August 10, 1889, they conveyed the surface of the balance of the strip to one John Stanley. That these last conveyances were made with the knowledge and consent of Colbert, who actually, in company with Burton, placed the grantees in possession of the ground. That said grantees and their successors have been in the open, notorious and continuous possession of the ground conveyed ever since, and their title and right of possession were always recognized by Colbert in his lifetime. That the Protection claim was duly represented each year from 1888 to 1898, the expense of representing being borne jointly by Colbert, Burton and McKay.

This answer then proceeds: "That by reason of the location of the Protection quartz lode mining claim and the protection given to the said ground thereby from possible adverse claimants, the said Charles Colbert, with the full knowledge and consent of William Burton, and pursuant to an agreement by and between the defendant Burton and the said Colbert, that all proceedings looking toward the procuring of the patent from the United States government should be for the joint benefit of Colbert and Burton and McKay, on the —— day of August, 1899, and the —— day of May, 1903, procured patents from the United States government to the hereinafter described portions of the ground included within the exterior boundaries of the Protection claim; the patents being procured under the name and designation of the 'Emery placer claim,' amended surveys 996 A and C. The portion of the said Emery placer mentioned as being included within the exterior boundaries of the Protection claim, and for which Colbert procured patent, is described as follows: 'Beginning at the northwest corner of the tract herein described, which is also corner No. 1 of survey No. 996 A, Emery placer,' etc. That Colbert in procuring patent acted as trustee for Burton and his grantees and successors. The Burtons then proceed to describe the portion of the Emery placer that William Burton claims to own by virtue of the deed from Colbert of parts of the Protection claim. Their answer concludes with the allegation that Colbert, since July 2, 1899, had no interest in the ground owned by William Burton and claimed no interest in his lifetime; that the Colbert estate "holds the legal title to said ground in trust for the use and benefit of the defendants." They pray that the administrator be declared a trustee, and be required by the court to execute a deed to William Burton for the land claimed by him, and that his title thereto be forever quieted as against the Colbert estate.

The defendant Alex. J. McKay claims to be the owner, by deed from Burton, of a certain portion of said ground, described in his answer. The defendant Frank Lawler claims to be the owner of what may be called the north fifty feet of the 60x200

feet strip, by conveyance from Burton. The defendants George and Annie Duwe claim the premises 50x60 feet in dimension, next south of the Lawler ground. The defendant Cora G. Stanley claims ownership of the south seventy-five feet of the same strip of ground. They all pray that the estate may be adjudged to hold the legal title of the respective pieces of ground in trust for them; also that their titles may be quieted as against the estate, and the administrator compelled to make conveyance to them of the land claimed by each.

By his reply the plaintiff admits what he terms the pretended location of the Protection claim, but alleges that it was not valid, because not made in good faith for the purpose of securing patent, and because the ground had previously been segregated from the public domain by means of the Emery placer location; denies that Colbert granted any portion of the ground to Burton, but admits that he quitclaimed that part described in the answers; admits the mesne conveyances through Burton to the other defendants; admits that defendants are in possession of a portion of the ground in controversy; but denies that Colbert placed them in possession.

The district court found all of the issues in favor of the defendants and entered a decree in their favor. The court found as a fact that the Protection claim contained within its exterior boundaries a certain described portion of the Emery placer, surveys A and C. The court concluded, as matter of law, that Colbert in his lifetime held the title to the premises claimed by defendants as trustee and that they are entitled to conveyances therefor from the plaintiff, as administrator. The court then adjudged the defendants to be the owners and entitled to the possession of the ground claimed by them, respectively. The decree concludes as follows: "It is further ordered, adjudged and decreed that the claims of plaintiff herein, as administrator of the estate of Charles Colbert, deceased, to said tracts of ground so adjudged to be the property of William Burton, Alex. J. McKay, Cora G. Stanley, Frank Lawler, John Duwe and Annie Duwe, are hereby adjudged and decreed to be

invalid and groundless, and the titles of the said William Burton, Alexander J. McKay, Cora G. Stanley, Frank Lawler, John Duwe and Annie Duwe, and their heirs and assigns thereto, are hereby adjudged to be quieted against all claims, demands, or pretensions of the said plaintiff, as administrator of the estate of Charles Colbert, deceased; and said plaintiff is hereby perpetually estopped and enjoined from setting up any claims thereto or to any part thereof."

The brief of appellants sets forth many assignments of error, but we are of opinion that when the case is stripped of some of the irrelevant matters considered by counsel, it is simple of consideration. We adopt the views of respondents' counsel as to the real questions at issue.

It is contended by appellant that the case necessarily involves a question of trusteeship on the part of Colbert, deceased. We do not think so. We eliminate that feature entirely. The question of estoppel is also argued by counsel. We do not deem it necessary to consider that question either. What have we left? Simply this: The plaintiff claims title to the ground in controversy by virtue of patents to the Emery placer, dated in 1899 and 1903, and asks to have the title of the estate quieted as to any claims of defendants. The defendants answer that prior to 1899, and subsequent to 1881, the date of location of the Emery placer, to-wit, on July 2, 1889, Colbert conveyed the ground in dispute to them and their predecessors in interest by a deed of grant, describing the same as a part of the Protection quartz lode mining claim. The questions to be solved are:

(1) What was the legal effect of the deed from Colbert to Burton?

(2) Can the property, attempted to be described therein, be identified so as to make the deed effective?

It is argued by counsel for plaintiff that the affirmative matter in the answer constitutes a "claim or demand against the estate of a deceased person," and that therefore none of the defendants were competent to testify as to any matter of fact occurring before Colbert's death. As we view the case, after

discarding all questions of trusteeship on the part of Colbert, it is simply an attempt on the part of the plaintiff to break down those recitals of Colbert's deed to Burton, wherein he says that he has thereby "granted, bargained, sold, remised, released, conveyed, and quitclaimed" to Burton certain portions of the Protection quartz lode mining claim, by showing that the descriptions in said deed are so indefinite as to make the deed inoperative. We find nothing in the nature of claims or demands against Colbert's estate in these answers. The defendants are merely protecting themselves against the claims and demands of plaintiff.

It may be that during the course of the trial defendants' counsel took a position at times inconsistent with the one assumed by them in this court, but that fact alone does not characterize the nature of the action. The pleadings speak, and the party prevailing is entitled to such relief, in a cause of this nature, as his proof warrants. During the trial of causes in the district courts, both judge and counsel are often required to decide most important questions without adequate opportunity for investigation or research. As the testimony develops, different phases of the controversy present themselves, and it is matter of small wonder that occasionally views are entertained or expressed that are afterward changed or modified by later developments. We hold that these defendants are not seeking to enforce any claim or demand against the Colbert estate and that, therefore, they were competent witnesses. This conclusion disposes of all the other questions raised by appellant relative to this branch of the case.

The grant deed from Colbert to Burton, if it conveyed any ground at all, passed Colbert's after-acquired title therein. (Civ. Code, sec. 1512.) A fee simple title is presumed to be intended to pass by a grant of real property, unless it appears from the grant that a lesser estate was intended. (Civ. Code, sec. 1511.)

We have no doubt of the correctness of the legal proposition that in deeding away a part of the Protection claim, as he did,

Colbert granted his interest in the ground, and his deed conveyed that portion of the Emery placer that was within the exterior boundaries of the Protection lode claim, if the disputed ground can be identified. It was immaterial by what name he designated the property in the deed. (*Phillpotts* v. *Blasdel*, 8 Nev. 61; *Weill* v. *Lucerne Mining Co.*, 11 Nev. 200; *Shreve* v. *Copper Bell Min. Co.*, 11 Mont. 309, 28 Pac. 315; *Wetzstein* v. *Largey*, 27 Mont. 212, 70 Pac. 717.) In the case of *House* v. *Jackson*, 24 Or. 89, 32 Pac. 1027, the supreme court of Oregon said: "The object and purpose of a description of real property is to mark out and designate the boundaries of a portion of the earth's surface, and, if this can be done as well by one name as another, that object has been fully accomplished."

And it makes no difference whether the Protection location was a valid one, as against others, or not. The name "Protection lode claim" simply identifies the property that Colbert intended to convey, and he is presumed to have intended, by his grant deed, to pass the best title he had in the ground, by virtue of section 1511 of the Civil Code.

Plaintiff contends that the property conveyed by Colbert to Burton cannot be identified as any part of the Emery placer claim. The main portion of his argument, however, is devoted to the position that Burton could not be a witness himself, and that, therefore, his statement to the witness Barker, who surveyed the disputed ground, as to where the initial corner of the Protection was originally located, was incompetent testimony, without which the attempted survey was of no value as evidence. Our decision that the defendants were competent witnesses practically disposes of this contention. Burton testified that he and Colbert located the Protection claim, and that he knew where the corners were. He says: "I showed Mr. Barker the location corners, and showed him the northwest corner. Colbert showed me the corners and where to put them up, and he ought to know. The northwest corner of the Protection was right at the rear of Alex. McKay's house. That post was there when I sold, and that post is there yet. The fence was obliterated, but the post

was there. It is in the rear of the house, right on a line with the northeast corner. It is right where it should be. I showed Mr. Barker the stakes last year, I think.'' Barker testified: ''Mr. Burton told me that the northwest corner of the Protection is the same as the northwest corner of the Emery placer.'' Also: ''I took as a starting point to make the survey the northwest corner of the Emery placer, and I assumed that that was the northwest corner of the Protection, and the surveys were based upon that statement of facts. I don't see what right I would have to tell one of the original locators of the claim that he was telling an untruth.'' He then testified, from a map prepared by him, as to the location and dimensions of the several pieces of ground in dispute, within the exterior boundaries of the Emery placer and also of the Protection lode claim. Lawler testified: ''He [Colbert] asked me if I had a deed from McKay. I said, 'Yes'; and he said it was as good as any deed that could be given in the United States. He said I had a perfect right.''

Defendant Alex. J. McKay testified: ''When I bought that interest in the Protection lode claim from Burton, the deed was given in the presence of Charles Colbert at Mr. Burton's house, where I paid the money, laid the money on the table, and Charles Colbert, for $100 I gave Burton, receipted for $50 that he paid him at that time. It was agreed that I should pay that money, and pay for the assessment work for two years. Mr. Colbert said it was all right, and he seemed very anxious for Burton to sell me that ground under those conditions. I took possession of the ground. Mr. Colbert and Mr. Burton showed me the stakes, measured off that particular part where I concluded at the time to build a house, and I was going to put up a stable there, me and another man that was in the commission business. Mr. Colbert showed me the stakes, and measured off the lot that they sold me—measured it over again. Mr. Colbert and Mr. Burton measured it off, and put up stakes at the corner. They both did that. I know what particular lot this was that they sold me. It was in the northwest corner of the Protection lode. It is the same lot that Mr. Lawler has at this

time, in the northwest corner of the Emery placer. I know where the northwest corner of the Protection lode claim is, and know where they are with reference to each other on the ground." These declarations of Colbert were admissible against his personal representative. (*Stanley* v. *Green,* 12 Cal. 148.) In this latter case Mr. Justice Field said: "The law will not declare the instrument void for uncertainty until it has been examined with all the light which contemporaneous facts may furnish."

We think the testimony sufficient to identify the ground as a part of the Emery placer and to justify the court's findings on that branch of the case.

Where monuments or marks called for in a deed or grant are lost or otherwise uncertain, their location may be proved by parol evidence. (5 Cyc. 961; *Cobb* v. *Cole,* 44 Minn. 278, 46 N. W. 364; *Barrett* v. *Murphy,* 140 Mass. 133, 2 N. E. 833; *Caspar* v. *Jamison,* 120 Ind. 58, 21 N. E. 743; *McAlpine* v. *Reicheneker,* 27 Kan. 257; *Smiley* v. *Fries,* 104 Ill. 416.)

We are of opinion, after a careful examination of the testimony, that it was sufficient to sustain the other findings of the court below.

The solution of the foregoing questions incidentally disposes of all other points raised by the appellant.

The decree heretofore entered by the district court of Silver Bow county, and the order denying appellant a new trial, are affirmed.

*Affirmed.*


MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.


Rehearing denied December 11, 1907.