CARLETON M. ELLIS *vs.* MARY E. WINGATE & others.

Barnstable.    January 9, 1959. — February 3, 1959.

Present: WILKINS, C.J., RONAN, SPALDING, WHITTEMORE, & CUTTER, JJ.

*Real Property,* Boundary.   *Deed,* Construction.   *Evidence,* Extrinsic af-
fecting writing;  Competency;  Relevancy and materiality;  Opinion:
expert.  *Error,* Whether error harmful.  *Witness,* Expert witness, Sur-
veyor.  *Equity Pleading and Practice,* Master: recommittal.

A conclusion by a master in a suit in equity, that the westerly boundary
of a parcel of land to which the plaintiff claimed title was the center
line of an ancient road on the ground to which the public had access
and was not somewhat to the east of the road as contended by the de-
fendants, who owned land adjoining that parcel on the west, was not
shown to be unjustified by the subsidiary findings of the master, who
based his conclusion upon substantial oral evidence, a view, and an
examination of many instruments of title and stressed the significance
of the road and of references to it in deeds in both the plaintiff's and
the defendants' chains of title.  [484]
Extrinsic evidence was admissible at a trial to determine the true intent
of the parties to a deed with respect to the boundaries of the land
conveyed where the deed was confused and ambiguous on that point.
[485]
Subsidiary findings by a master in a suit in equity to quiet title to a parcel
of land claimed by the plaintiff did not show to be unjustified his con-
clusion that the westerly boundary of the parcel was a continuation to
the north of a road which he found constituted the westerly boundary
of the adjacent parcel on the south, which was described in deeds as
bounded on the north by the parcel in question, even though none of
the conveyances pertaining to the parcel in question mentioned the
road as its westerly boundary.  [485]
It was not improper for a master, hearing a suit in equity to quiet title in
which original instruments in the chains of title involved, or copies of
them, were in evidence, to receive in evidence abstracts of the chains
of title solely as guides to the instruments.  [486]
At the hearing by a master of a suit in equity to quiet title to a parcel of
land claimed by the plaintiff, error, if any, in the admission in evidence
of testimony by the plaintiff that his immediate predecessor in title,
while negotiating with him for the sale of the parcel, had pointed out a
road as the westerly boundary of the parcel was not shown in the cir-
cumstances to be prejudicial to the defendants, who owned land west

of the road and claimed that the westerly boundary of the plaintiff's parcel was somewhat to the east of the road. [486]

At the hearing of a suit in equity to quiet title to a parcel of land, in which the plaintiff claimed that the westerly boundary of the parcel was an ancient road on the ground and the defendant's answer denied both the existence and public use of the road, evidence from the plaintiff about use of the road by the public was relevant. [486–487]

The location of a boundary was a proper subject of expert opinion testimony; and such testimony was properly allowed to be given by a registered land surveyor having knowledge of the relevant conveyances. [487]

In a suit in equity to quiet title, there was on the record no abuse of discretion in refusing to recommit the report of a master for further findings and for a report of additional documentary evidence. [487]

BILL IN EQUITY, filed in the Superior Court on March 1, 1957.

The defendants appealed from an interlocutory decree confirming a master's report by *Hudson*, J., and a final decree by *Dewing*, J.

*Dennis M. Cronin*, (*Dennis M. Cronin, Jr.*, with him,) for the defendants.

*James W. Kelleher*, (*James D. De Giacomo* with him,) for the plaintiff.

CUTTER, J. This is a bill in equity to quiet title to land in Dennis. The case was referred to a master. He filed a report which contained findings favorable to the plaintiff's contentions. The defendants have appealed from an interlocutory decree confirming the master's report and from the final decree setting forth that the plaintiff had good title to parcel A and the Howes lot, both hereinafter mentioned, and a right of way over parcel C, also later mentioned.

The master's subsidiary findings show the facts hereinafter stated. The plaintiff by his bill claims title to parcel A and the Howes lot, mentioned below, shown on plans annexed to the bill in equity. Each of these parcels lies some distance north of a public way known as Lower County Road. The Howes lot lies to the north of and abuts upon parcel A and upon a third parcel, parcel B, lying to the east of parcel A and also shown on a plan annexed to the bill. No issue exists here with respect to parcel B. Between the

southerly boundary of parcel A and Lower County Road is a parcel one rod wide known as parcel C, over which the plaintiff claims a right of way. Three confusing lines of conveyances beginning in 1850 are here involved. Only so much of these chains of title is here stated as is necessary to permit discussion of the principal issues raised by the defendants.

All three parcels, as well as certain land to the west of these parcels, were, prior to March 8, 1850, in the ownership of four brothers, Barnabas, Nehemiah, Freeman, and Ezra Wixon. On March 8, 1850, Ezra received from his brothers a deed of a part of this land. The parcel granted was described as having its westerly boundary "in the range of Nehemiah Wixon as trees are marked." The plaintiff claims through Ezra. On March 8, 1850, also, Nehemiah, through whom the defendants claim, received from his three brothers a deed of another portion of the land held in common. The deed states the easterly boundary of the parcel conveyed as "land of Ezra Wixon as trees are marked." On the ground, at substantially the location of the westerly boundary of parcel A, as shown on a plan attached to the bill, is a road, to which the public has had access although it has never been accepted by the town. At the time of the hearing, this road had been "in existence for more than . . . thirty-five years."

In several later conveyances by Ezra Wixon or his successors in title the westerly boundary of the land conveyed is stated as "a road reserved by Ezra Wixon, one rod wide," or a "town road." In conveyances by successors in title of Nehemiah Wixon, there were references in various forms to a reservation (which may have been an exception) of a "road as formerly used from County Road to or near the bars near dwelling house of Albert Edwards on the [e]ast side of the premises." The master obviously gave substantial weight to the existence of the ancient road on the ground and to the provisions of the deeds in the plaintiff's chain of title and in the defendants' chain of title referring to the road. He concluded that the "westerly boundary [of

parcel A] . . . is the center line of the way as shown on" the plan annexed to the bill.[1]

To the master's conclusion, that the road was the westerly boundary of parcel A, the defendants seasonably made various objections. By motion to recommit, they have attempted to obtain further findings of fact and reports of evidence which might support their contentions. The master's conclusions were based upon substantial oral evidence, including expert testimony, a view, and the examination of some seventy-eight different instruments. Although some descriptions of boundaries appear to have been obscure and somewhat inconsistent, nothing in the subsidiary findings shows that the master's conclusion is not justified.

One mortgage given by a predecessor in title of the plaintiff contained bounds, in part at least, consistent with the defendants' view that the true westerly boundary of parcel A was somewhere east of the road fixed as the boundary by the master. This mortgage was later discharged and thus is not essential to the plaintiff's chain of title. To this mortgage the master gave consideration. We cannot say that he was wrong in giving it little weight. He may reasonably have concluded that it was intended to cover only a part of the mortgagor's land, or that the description was erroneous. The mortgage, to be sure, mentioned an earlier deed not included in the master's summary of the plaintiff's chain of title, but it is plain that this part of the report properly referred only to deeds which the master regarded as particularly significant in determining the western boundary of parcel A. Nothing in the record indicates that any deeds not specifically summarized would assist in this determination.

---

[1] It need not be decided whether the grantors in any such deeds attempting to reserve rights in the road (without using words of inheritance as was then required for a reservation) technically effected a "reservation" (*Kakas Bros. Co.* v. *Kaplan,* 331 Mass. 323, 326) or an "exception." See *McDermott* v. *Dodd,* 326 Mass. 54, 56–57. See also *Stockwell* v. *Couillard,* 129 Mass. 231, 233. The references to the road, in existence on the ground, were in any event indications of references to a bound. See *Foley* v. *McCarthy,* 157 Mass. 474, 476–477. See also *Sheppard Envelope Co.* v. *Arcade Malleable Iron Co.* 335 Mass. 180, 185.

The master said about one deed in the plaintiff's chain of title that the "description . . . is erroneous in that the various courses are transposed" and that "it is possible to rearrange them to conform to the bounds and the adjoining owners as described by previous and subsequent deeds so that the description . . . fits in with the surrounding parcels." The master's task with respect to this obviously confused instrument was to determine the true intention of the parties and the land which the grantor meant to convey. Because the deed was ambiguous in effect he could have reference to relevant extrinsic evidence bearing upon this intent, such as the circumstances with respect to the ownership of adjacent parcels, the contents of other instruments in the chain of title, and the subsequent action of the parties. See *Barrett* v. *Murphy,* 140 Mass. 133, 142; *Holmes* v. *Barrett,* 269 Mass. 497, 500; *Sutcliffe* v. *Burns,* 294 Mass. 126, 131–132; Swaim, Crocker's Notes on Common Forms (7th ed.) §§ 205–217, and discussion in § A16, at pp. 568–569. See also *Parks* v. *Loomis,* 6 Gray, 467, 472; *Abbott* v. *Frazier,* 240 Mass. 586, 593; *Lyon* v. *Parkinson,* 330 Mass. 374, 378; Wigmore, Evidence (3d ed.) § 2477. No error has been shown in the master's construction of the deed in question.

The master found that "none of these conveyances" of the Howes lot mentions as its westerly bound the continuation (to the north) of the road which he concluded to be the westerly boundary of parcel A. He gave weight, however, to the conveyances in the chain of title of parcel A, describing that parcel to be bounded on the north by land of Howes. These references he accepted as indications that the Howes lot extended as far west as parcel A, that is, to the road. The subsidiary findings do not indicate that this view was unjustified. Similarly nothing in the subsidiary findings indicates that the master was not justified in concluding that the plaintiff possessed a right of way over parcel C.

The defendants contend, on the basis of objections to the report, that the master dealt improperly with certain offered

evidence. As to the first such contention, it was not improper for the master to receive in evidence, solely as guides to the numerous conveyances in evidence, abstracts of the chains of title here involved. His use of them was expressly limited to this narrow purpose. The original instruments mentioned in the abstracts, or copies of them, were in evidence.

A more doubtful question is whether the master should have allowed the plaintiff to testify that his immediate predecessor in title, when she was negotiating with the plaintiff for the sale to him of parcel A, had pointed out to him the road as her westerly boundary. See *Barrett* v. *Murphy*, 140 Mass. 133, 142–143; *Abbott* v. *Walker*, 204 Mass. 71, 73; Wigmore, Evidence (3d ed.) §§ 1563–1567; McCormick, Evidence, §§ 253–254, 256–257. Cf. *Hayden* v. *Stone*, 121 Mass. 413, 414. It is argued that it may have been somewhat to the predecessor's advantage to claim the road as her boundary, but there is no showing that any boundary dispute had then arisen, or that there was other reason (than that she was selling property) to doubt the good faith of the declaration. She was on the land and claimed to be its owner when the declaration was made. There is no indication that the master placed material reliance upon this testimony. See *Bouchard* v. *Bouchard*, 313 Mass. 531, 537–538. In view of the recent date of this declaration, it was obviously less likely to influence him than the provisions in the numerous early deeds dealing with the defendants' land and with what is now parcel A. These deeds appear to have been the principal grounds of his decision, and the declaration was largely confirmatory of them. We need not decide whether in other circumstances the admission of such a declaration might require reversal. Here the error (if there was error in admitting this testimony) does not appear of sufficient significance to be regarded as prejudicial. G. L. c. 231, § 132. See *Pataskas* v. *Judeikis*, 327 Mass. 258, 261.

The defendants' answer denied public use of the road as well as the existence of the road. There is thus no merit to the defendants' contention that testimony from the plain-

tiff about the use of the road by the public was irrelevant. Such evidence tended to show the existence of the road and that its route was established on the ground.

There was no abuse of discretion in permitting a surveyor to testify to the location of the westerly boundary of parcel A. The surveyor was found by the master to be a registered land surveyor (see G. L. c. 112, §§ 81D–81T, inclusive, as amended) and was permitted to give opinion testimony as an expert. The position of a boundary is a proper subject of expert testimony. See Wigmore, Evidence (3d ed.) § 1956. See also *Morrison* v. *Holder*, 214 Mass. 366, 369. Questions about the extent of the knowledge which the surveyor has of relevant conveyances go to the weight of the testimony rather than to its competence. Cf. *Muzi* v. *Commonwealth*, 335 Mass. 101, 106. The surveyor, at the time he testified, could have been found to have had sufficient knowledge of the relevant conveyances to provide a proper foundation for his testimony.

There was no abuse of discretion in refusing to recommit the master's report for further findings and for the report of additional documentary evidence. See *Carleton & Hovey Co.* v. *Burns*, 285 Mass. 479, 484; *Macera* v. *Mancini*, 327 Mass. 616, 620. The matters mentioned in the defendants' elaborate motion to recommit do not reveal error requiring recommittal as a matter of law. See *Sherman* v. *Sherman*, 336 Mass. 254, 259–260.

The interlocutory decree confirming the master's report and the final decree are to be affirmed.

*So ordered.*